UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| David Keith Buff, #311020,<br><br>                      Plaintiff,<br><br>v.<br><br>Wayne McCabe, Ann Sheppard, Dessirene<br>Lloyd, Carl Von Mutius, Justin Aranda,<br>and Douglas Cook,<br><br>                      Defendants. | C/A No. 5:13-cv-1901-TLW-KDW<br><br><br><br>Report and Recommendation |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC") proceeding pro se, filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment, ECF No. 108, filed on January 27, 2015. The court entered a *Roseboro* Order[1] on January 28, 2015, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 109. After receiving an extension, Plaintiff filed a Response in Opposition to Defendant's Motion on April 13, 2015, ECF No. 117, and Defendants filed a Reply to Plaintiff's Response on April 23, 2015, ECF No. 118. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

73.02(B)(2)(d) and (e), D.S.C. Because this Motion is dispositive, a Report and Recommendation ("R&R") is entered for the court's review.

I.     Background

Plaintiff is currently housed at Lieber Correctional Institution ("LCI"). ECF No. 1 at 2. Plaintiff filed his Complaint on July 11, 2013, alleging facts that give rise to three incidents of excessive force which occurred on January 6, 2011 and March 10-11, 2011. *See id.* Plaintiff filed an Amended Complaint on September 18, 2014. ECF No. 85. For purposes of the R&R, the undersigned will reference the allegations contained in Plaintiff's Amended Complaint. *See id.* In the first two alleged excessive force incidents, SCDC staff maced Plaintiff and in the third incident, Plaintiff was put in a restraint chair. *Id.*

Prior to the three incidents at issue in his Amended Complaint, Plaintiff maintains that he and his then cellmate, Martin, got into an altercation with Defendant Cook on December 6, 2011. *Id.* at 2. Plaintiff maintains that he refused to return a lunch tray to Defendant Cook on December 6, which led to an argument between them. *Id.* Plaintiff alleges that on December 6, 2011, Defendant Cook slammed Martin's left hand in the security pass-through window as he was retrieving trays and broke two of Martin's fingers. *Id.* at 2-3. Plaintiff alleges that thereafter he and Martin got into several arguments with Defendant Cook where Defendant Cook threatened to spray Plaintiff and Martin with chemical munitions. *Id.* at 3. These prior encounters between Plaintiff and Defendant Cook are background for Plaintiff's first alleged incident of excessive force and are not the subject of Plaintiff's case.

Plaintiff alleges that on January 6, 2011, Defendant Cook was collecting dinner trays and asked for Plaintiff and Martin's trays through the security pass-through window flap. *Id.* Plaintiff maintains that, based on prior interactions, rather than give Defendant Cook their trays, he and Martin requested another officer be present. *Id.* Plaintiff maintains that Defendant Cook

responded by asking if they were refusing to give him their trays, and Plaintiff maintains that he and Martin replied that they were only asking for another officer to be present. *Id.* Plaintiff alleges that Defendant Cook then asked again if he and Cook were refusing to give him their trays and "proceeded to spray [him and] Martin with a prolonged burst of a large quantity of chemical munitions without any warning." *Id.* Plaintiff maintains that he experienced immense pain and could not wash his face because the water in his cell had been turned off. *Id.* Additionally, Plaintiff alleges that the air circulation system in his cell was also turned off. *Id.*

Plaintiff contends that Defendant Aranda came to his cell after the macing, and he and Martin explained to him what happened. *Id.* Plaintiff maintains that at that time he "requested a shower, cleaning supplies to clean their cell, to have their clothing and bedding washed and for the cell water to be turned back on." *Id.* at 4. Plaintiff alleges that these requests were denied, and he and Martin "were forced to remain in that chemically contaminated environment for several days—the only exception was that night shift eventually turned the cell water back on." *Id.*

As a result of the macing, Plaintiff alleges that he sustained an injury to his right eye which caused him immense pain over several months and blurriness in vision. *Id.* Additionally, Plaintiff contends that he "suffered random nose bleeds, intense nasal and sinus pains and problems during that time." *Id.* Plaintiff maintains that SCDC medical staff determined that Plaintiff's "vision in his right eye was diminished but could not recommend him to an eye specialist unless nearly blind." *Id.* Plaintiff maintains that he was prescribed medicated eye-drops, took ibuprofen for pain, and told to return to medical services if the nosebleeds continued. *Id.* Plaintiff alleges that he attempted to see medical services "for the same persisting problems, but none was assested (sic) by medical." *Id.*

The second macing incident Plaintiff describes in his Amended Complaint occurred on March 10, 2011. *Id.* Plaintiff alleges that he was again sprayed with chemical munitions after

refusing to be placed in the same cell as his new roommate. *Id.* Plaintiff alleges that the new cellmate had previously threatened Plaintiff, and therefore, Plaintiff maintains that he informed Defendant Von Mutius and Officer Lundgren that "there was no way he was going to be left in a cell alone with an inmate who repeatedly threatened his life." *Id.* Furthermore, Plaintiff alleges that he informed the Officers that "he would be forced to protect his own life by any means necessary, even it that meant attacking the other first [therefore Plaintiff] refus[ed] to allow the inmate into the cell by getting handcuffed and requested to speak to a Lieutenant or Captain, because [he] was in fear of his life from that inmate." *Id.* Thereafter, Plaintiff alleges that Defendant Von Mutius ordered Officer Landgrun to spray Plaintiff with chemical munitions. *Id.*

Plaintiff alleges that he suffered the same effects from both macing incidents. *Id.* Plaintiff alleges that his water and air circulation were turned off during the March 10, 2011 macing incident. *Id.* Plaintiff alleges that he requested a shower, cleaning supplies to clean the cell, and to have his clothing and bedding washed, but his requests were denied. *Id.* Plaintiff maintains that after he explained what had occurred to Captain Brightharp he was immediately removed from his cell and placed in a holding cell. *Id.* On March 11, 2011, the following day, Plaintiff alleges that he "was escorted from the holding cell to the SMU Sally-port" where he was informed that "he was being placed back into the same cell with the same inmate." *Id.* Plaintiff maintains that he again told SCDC officers information about the other inmate while in full restraints, belly chains, and leg-iron cuffs. *Id.*

Plaintiff alleges that after Defendant Lloyd learned of the situation, he got authority from Defendant McCabe to place Plaintiff in a restraint chair for four hours. *Id.* at 5. Thereafter, Plaintiff alleges that his restraints were removed and he was strip searched in an open area. *Id.* After putting on his underwear again, Plaintiff maintains that he was placed back in restraints. *Id.* At this point, Plaintiff represents that a mental health counselor assessed him and asked whether

he felt like hurting himself or others to which he responded, "no." *Id.* Plaintiff alleges that he was then placed in a restraint chair without difficulty. *Id.* Plaintiff's time in the restraint chair was extended another four hours after Plaintiff repeated his same initial statement to CO Lundgren and Defendant Sheppard. *Id.* During his time in the restraint chair, Plaintiff alleges that a group of teenagers were brought through the SMU and saw Plaintiff which was humiliating. *Id.* Plaintiff maintains he received a second four-hour extension in the restraint chair and was restrained there for a total of twelve hours. *Id.* Plaintiff maintains that Lieutenant Mack removed him from the chair and placed him in a holding cell for three days. *Id.* Plaintiff alleges that there was no running water or working toilet in the holding cell. *Id.*

Plaintiff maintains that on March 14, 2011, he was placed in another cell with a different inmate without difficulty. *Id.* Plaintiff maintains that he was then finally able to shower and clean off the chemical munitions. *Id.* Later that day, Plaintiff alleges he was moved to a single person cell. *Id.* Plaintiff also alleges that when his property was returned it had not been cleaned. *Id.* Plaintiff maintains that he wrote to medical services and sought treatment for "problems similar to those he suffered on January 6, 2011, and for pain and problems with his left-knee from the prolonged stationary position in the restraint chair." *Id.* Plaintiff alleges that he was never assessed for his medical issues. *Id.*

In his first cause of action for violation of his Eighth Amendment rights, Plaintiff alleges and lists 22 constitutional rights violations including, excessive force claims and conditions of confinement claims. *Id.* at 6-7. In his second cause of action for "Violation of the Fourth Amendments Right to Privacy," Plaintiff alleges and lists nine constitutional rights violations including strip searches without privacy, displaying Plaintiff in front of a group of teenagers, and depriving Plaintiff of underwear and exposing his body in a public place. *Id.* at 8. Plaintiff requests that the court grant him compensatory damages, nominal damages, punitive damages,

declaratory judgment, injunctive relief, attorney's fees, costs, and any additional relief the court deems just and proper. *Id.* at 9.

II.     Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, Plaintiff must only plead "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). In order for Plaintiff's Complaint to survive Defendants' Motion to Dismiss, Plaintiff does not need to plead detailed factual allegations in his Complaint. *See id.* However, the United States Supreme Court has held that a plaintiff's grounds for relief requires more than just stating legal conclusions and elements of a cause of action. *See Papasan v. Allain,* 478 U.S. 265, 286 (1986) (noting that, on a motion to dismiss, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."). Plaintiff's complaint must contain sufficient factual allegations that make a claim for relief plausible, not just possible. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp.,* 550 U.S. at 570. This court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus.,* 637 F.3d 435, 440 (4th Cir. 2011).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317,

323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 251.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III.   Analysis

A. Eleventh Amendment Immunity

Defendants argue that Plaintiff's action should be dismissed as a matter of law to the extent that they were sued in their official capacity and while acting in their official capacity they are entitled to Eleventh Amendment Immunity. ECF No. 108-1 at 10-11.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh

Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because Defendants were agents or employees of the State of South Carolina when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663.  The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As an arm of the State, SCDC Defendants, in their official capacities, are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against SCDC Defendants in their official capacities be dismissed.

   B.  Excessive Force

Defendants argue that there is no evidence that Defendants used constitutionally excessive force and/or knowingly violated Plaintiff's constitutional rights.[2] ECF No. 108-1 at 11-16. Specifically, Defendants maintain that during the January 6, 2011 incident Plaintiff and his cellmate were refusing to return their food trays to Defendant Cook despite his directives. *Id.*

---

[2] In his Response to Defendants' Motion, Plaintiff submits affidavits, "request to staff member" forms, and "sick call or dental" request forms. EFC No. 117-1; 117-2; 117-3. The court will consider the affidavits as evidence. However, the court will consider all other submitted forms as allegations only. The forms Plaintiff submitted lack authenticity, and there is no indication that Plaintiff submitted these forms to SCDC staff. Accordingly, the undersigned will not consider any forms submitted by Plaintiff as evidence. *See Orsi v. Kirkwood*, 999 F.2d 86, 91 (4th Cir. 1993) (where the Fourth Circuit held that the district court did not err in refusing to consider unauthenticated documents during summary judgement because Rule 56 allows "a district court to ascertain, through criteria designed to ensure reliability and veracity, that a party has real proof of a claim before proceeding to trial"). The *Orsi* Court held: "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." 999 F.2d at 92.

Furthermore, Defendants contend that Defendant Cook's use of force "was applied in a good-faith effort to maintain or restore discipline, rather than maliciously and sadistically to cause harm." *Id.* at 13. Defendants argue that Plaintiff was refusing to be handcuffed and threatened to kill any man placed in his cell during the March 10, 2011 incident. *Id.* at 14. Additionally, Defendants maintain that while being escorted from a holding cell back to his cell on March 11, 2011, Plaintiff again threatened "to kill any roommate he got." *Id.* Defendants argue that based on Plaintiff threats, Defendants contend that Plaintiff was placed in a restraint chair. *Id.* at 15. Defendants argue that any use of force used against Plaintiff was constitutional. *Id.* at 16.

The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components.

For the subjective component, Plaintiff must prove that Defendant used chemical munitions on him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475 U.S. at 321.

9

1.  January 6, 2011 and March 10, 2011 Macing Incidents

In his Complaint, Plaintiff alleges that on January 6, 2011, Defendant Cook was collecting dinner trays and asked for Plaintiff and his cellmate's trays through the security pass-through window flap. ECF No. 85 at 3. Plaintiff maintains that rather than give Defendant Cook their trays, he and his cellmate requested another officer be present. *Id.* Plaintiff maintains that Defendant Cook then sprayed chemical munitions on him and his cellmate. *Id.* On March 10, 2011, Plaintiff was again sprayed with chemical munitions after refusing to be placed in the same cell as his new roommate. *Id.* at 6. Plaintiff alleges that the new cellmate had previously threatened Plaintiff, and therefore, Plaintiff "refus[ed] to get handcuffed and requested to speak to a Lieutenant or Captain, because he was in fear of his life from that inmate." *Id.* Thereafter, Plaintiff alleged that Defendant Von Mutius ordered Officer Landgrum to spray Plaintiff with chemical munitions. *Id.*

Here, "[t]he fact that pepper spray was used in th[ese] incident[s] . . . does not mandate that [p]laintiff's claim go forward, as the use of mace, tear gas or pepper spray by prison officials is not a per se violation of a prisoner's constitutional rights when used appropriately." *Townsend v. Anthony*, No. CA 0:03-2528-RBH-BM, 2006 WL 2076920, at *9 (D.S.C. July 24, 2006). The Fourth Circuit's decision in *Williams v. Benjamin*, 77 F.3d 756, provides additional guidance for courts when considering claims relating to the use of mace, tear gas, or other like substances. There, the *Williams* court recognized: "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary for the sole purpose of infliction of pain." *Id.* at 763 (internal citation omitted). While the use of mace on prisoners confined in their cells in not per se unconstitutional, "it is necessary to examine the totality of the circumstances, including provocation, the amount of gas used, and the purpose for which the gas is used to determine the validity of the use of tear gas in the prison

environment." *Id.* (internal citation omitted). "The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis." *Id.* at 762.

Defendants argue that Plaintiff acknowledges that he failed to comply with Defendant Cook's verbal instruction to return his dinner tray on January 6, 2011. ECF No. 108-1 at 12. Additionally, Defendants maintain that Plaintiff concedes that he was refusing to be handcuffed on March 10, 2011. *Id.* at 14. Specifically regarding the January 6, 2011 incident, in his Amended Complaint, Plaintiff alleges that after Defendant Cook requested their trays that both inmates "politely asked Defendant Cook to call another CO or Supervisor to their cell due to past incidents between them. . . ." ECF No. 85 at 3. Specifically regarding the March 10, 2011 incident, Plaintiff concedes that he was "refusing to allow the inmate into the cell by getting handcuffed. . . ." *Id.*; *see also* ECF No. 117 at 2.

Considering the first and second *Whitley* factors and the additional guidance from *Williams*, the undersigned finds the Plaintiff has failed to present evidence that demonstrates Defendants used mace for the very purpose of causing Plaintiff harm. In support of their Motion, Defendants attached Defendant Cook's affidavit which indicates that from his perspective, Defendant Cook sprayed chemical munitions "in a good-faith effort to maintain order and restore discipline." ECF No. 108-3 ¶ 9. Further, Defendant Cook attests that "[f]or security reasons, it was very important for officer to collect every food tray, as inmates had been known to create weapons and cell door keys from the hard plastic trays. Likewise, it was very important for security reasons to always secure the security/food flap on the cell doors when not in use as inmates have assaulted security and medical staff through open food flaps." *Id.* at ¶ 2. Contrary to Plaintiff's allegations, Defendant Cook avers that he did not have any problems with Plaintiff prior to January 6, 2011. *Id.* at ¶ 4. Additionally, Defendant Cook states that when he was retrieving trays, Plaintiff and his cellmate did not comply with his request for them to return their

trays. *Id.* at ¶ 5. Moreover, Defendant Cook attests that he gave three verbal directives for Plaintiff and his cellmate to return their trays, and they never complied. *Id.*

Therefore, Defendant Cook maintains he "issued two short bursts of [his] MK4 OC spray to each inmate's facial area as [he] was trained. A total of 28 grams of chemical was deployed within the cell." *Id.* Defendant Cook represents he secured the food flap and notified his supervisor of his use of chemical munitions. *Id.* at ¶ 6. Additionally, he avers that he also notified the SMU control room to call for a medical staff member to come and evaluate Plaintiff and his cellmate. *Id.* In addition to Defendant Cook's affidavit, the "Report on Use of Force" reflects that Plaintiff and Martin refused to comply with Defendant Cook's directive that they hand over their food trays. ECF No. 108-13.

In a separate affidavit attached to Defendants' Motion, Nurse Markowitz avers that 35 minutes after the January 6, 2011 macing incident he evaluated Plaintiff and his cellmate. ECF No. 108-4 at ¶ 4. At that time, Nurse Markowitz attests that neither inmate was experiencing any breathing distress, therefore no medical treatment was given. *Id.* Additionally, Nurse Markowitz represents that there was running water and a circulatory air vent in Plaintiff's cell, "both of which are available for self de-contamination from the temporary effect of exposure to OC spray." *Id.* Upon review of Plaintiff's medical records, Nurse Markowitz attests that he "do[es] not see any complaints by [Plaintiff] related to this incident until approximately one month later where he was complaining of pain in his right eye and his sinuses. He was treated by the physician for an irritated cornea." *Id.* at ¶ 5. In addition to Nurse Markowitz's affidavit, medical notes indicate that Plaintiff was seen on a sick call on February 4, 2011, for problems with his right eye and sinuses. ECF No. 108-15 at 4. Thereafter, Plaintiff was seen at the doctor's clinic on February 11, 2011, where an eye examination revealed "no visual impairment" though

Plaintiff complained of irritation, blurriness, and sensitivity. *Id.* The doctor prescribed medicated drops for Plaintiff that were to be administered three times a day. *Id.*

Regarding the March 10, 2011 excessive force encounter, Defendants attached the affidavit of Defendant Von Mutius in support of their Motion. ECF No. 108-5. Defendant Von Mutius attests that:

> Upon being informed that he was getting a roommate and needed to approach the security flap to be handcuffed so that we could open the cell door, [Plaintiff] refused CO Lundgren's verbal directives. He stated to us that he would not allow another inmate to be housed with him and threatened to kill any inmate placed into his cell. At no time did [Plaintiff] advise us that he had been threatened in the past by the inmate with whom he was to be housed.

*Id.* at ¶ 4. Based on Plaintiff refusing to be handcuffed, Defendant Von Mutius, in his discretion as a supervisor, "advised CO Lundgren to use his MK-04 OC chemical munition to gain [Plaintiff's] compliance," and Lundgren then administered "two short bursts of the OC spray towards [Plaintiff's] facial area." *Id.* at ¶ 5. The total amount of spray deployed was 31 grams. *Id.* Thereafter, Plaintiff complied with the directives to be handcuffed, was removed from his cell, and escorted to the SMU holding cell. *Id.* at ¶ 6. Defendant Von Mutius attests that Plaintiff was medically evaluated and cleared. *Id.*

Defendants also submitted the affidavit of Officer Lundgren, who has not been named in this action, for the court's consideration. ECF No. 108-6. Officer Lundgren avers that prior to being maced Plaintiff "informed us that he was refusing to allow another to move into 'his cell.'" *Id.* at ¶ 4. Officer Lundgren also attests that he directed Plaintiff to come to the cell security window to be handcuffed, but Plaintiff refused. *Id.* Officer Lundgren explains that "[f]or safety and security reasons, all inmates housed on SMU must be handcuffed prior to opening the cell door." *Id.* Officer Lundgren avers that he administered two bursts of chemical munitions after Plaintiff refused several verbal directives to come to the cell window. *Id.* Sgt. Lundgren attests

that Plaintiff was examined by Nurse Gibson after being maced. *Id.* at ¶ 5. Medical notes submitted by Defendants indicate that a mental health worker spoke with Plaintiff prior to his placement in a restraint chair. ECF No. 108-15 at 3. The mental health worker indicated that Plaintiff was alert and had coherent and logical speech during their interaction. *Id.*

No evidence demonstrates that Plaintiff ever complied with Defendant Cook's direct orders to return his meal tray on January 6, 2011. Similarly, no evidence demonstrates that Plaintiff complied with other officers' orders instructing that he be handcuffed and allow a new cellmate into his cell. Rather, all evidence, including Plaintiff's own version of events as outlined in his Amended Complaint, indicates that Plaintiff continued to disobey orders until officers deployed chemical munitions. The affidavits Plaintiff attached to his response concern the March 10, 2011 incident. *See* ECF No. 117-1. There, other inmates attest that Plaintiff refused to let the new inmate into his cell. *Id.* at 2-4. Additionally, no evidence demonstrates Defendant Cook acted with malice when he administered chemical munitions at Plaintiff or that Defendant Von Mutius acted with malice by ordering Officer Lundgren to administer chemical munitions. The undersigned notes that Defendant Cook administered a total 28 grams of chemical munitions into Plaintiff's cell on January 6, 2011, while on March 10, 2011, Plaintiff was sprayed with 31 grams of chemical munitions. *See* ECF Nos. 108-13; 108-16. These quantities of chemical munitions are not excessive. *See Robinson v. S.C. Dep't of Corr.*, No. 5:10-2593-HMH-KDW, 2012 WL 851042, at *7 (D.S.C. Mar. 13, 2012) (finding that defendants' two short bursts of chemical munitions, with the largest quantity of chemical munitions dispersed being 31 grams to be a small amount); s*ee Plummer v. Goodwin,* No. 8:07–2741–TLW–BHH, 2010 WL 419927, at *7 n.4 (D.S.C. Jan. 29, 2010) (finding the use of 33.5 grams of chemical munitions to be a small quantity and "not constitutionally relevant").

In examining the third and fourth prong of *Whitley*, the undersigned notes that Plaintiff has not submitted any medical *records* to the court or any *evidence* that the water and air circulation in his cell were turned off. Additionally, other than his allegations that he "experienced immediate blindness, immense pain and suffering, and burning to the mouth and throat, ECF No. 85 at 3, these effects are not "serious" enough to demonstrate an Eighth Amendment violation. Therefore, Plaintiff has failed to demonstrate that he suffered an injury as a result of being exposed to mace. *See Duncan v. Gordon,* No. CA 8:06–cv–396–MBS, 2007 WL 1031939 at *8 (D.S.C. Mar. 29, 2007) (noting that prisoner's allegations that he suffered "breathing complications, chest pain, and mental depression from being sprayed with chemical munitions" failed to establish a serious medical need necessary to demonstrate an Eighth Amendment violation). Though Plaintiff also claims to have sustained an injury to his right eye as well as suffered random nose bleeds, intense nasal and sinus pains, Plaintiff conceded that his eye condition was assessed and treated by medical services. Medical notes indicate Plaintiff was seen and assessed by medical staff after complaining of eye and sinus problems. ECF No. 108-15 at 4. Additionally, six medical notes indicate that Plaintiff was seen and monitored during and after the March 10-11, 2011 incident. *Id.* at 2-3.

Under the final *Whitley* prong, the undersigned notes Plaintiff does not allege that he was compliant with orders, and the Fourth Circuit has held that a prison official may use mace to compel obedience or to subdue recalcitrant prisoners. *See Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984). Therefore, the undersigned finds that Plaintiff has failed to demonstrate that Defendants acted in a malicious manner or for the sole purpose of inflicting pain on Plaintiff. Moreover, the undersigned notes that courts should give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at

321-22. Accordingly, there is no genuine issue of material fact concerning the two macing incidents described in Plaintiff's Amended Complaint, and the undersigned recommends Defendants' Motion for Summary Judgment be granted on Plaintiff's excessive force claims related to macing.

> 2.  March 11, 2011 Incident

Defendants maintain that there is no evidence that Defendants employed constitutionally excessive force in the process of placing Plaintiff in the restraint chair. ECF No. 108-1 at 16. Furthermore, they maintain that Plaintiff was placed in the chair because of homicidal threats Plaintiff made. *Id.* Specifically, Defendants argue that "[t]here is no evidence that the restraint chair was used maliciously and sadistically for the purpose of causing Plaintiff harm, rather it was used to maintain institutional security and discipline due to his threats. *Id.*

In his Amended Complaint, Plaintiff maintains that on the morning of March 11, 2011, he was being escorted from his holding cell back to his own cell when he told Officers Frazier and Lundgren that if he was placed in the cell with the cellmate that he would protect his own life by any means necessary, even if that meant attacking first. ECF No. 85 at 4. In response, Plaintiff maintains he was placed in a restraint chair for twelve hours. *Id.* at 5. After being restrained in the chair, Plaintiff alleges that he was placed in a holding cell, "stripped out," for three days. *Id.* Plaintiff alleges that he was removed from the holding cell on March 14, 2011, and placed in another cell with a different inmate without difficulty. *Id.*

It is well settled that the "unnecessary and wanton infliction of pain" imposed "maliciously and sadistically" by prison officials "for the very purpose of causing harm" states a claim under the Eighth Amendment. *Whitley v. Albers,* 475 U.S. at 321. However, it is also recognized that a prison's internal security is "peculiarly a matter normally left to the discretion of prison administrators" and they should be given "wideranging deference" regarding the

actions necessary "to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22. In evaluating the use of force by prison officials, courts should consider the totality of circumstances, including such factors as the need for the application of force; the relationship between the need for force and the amount of force used; the extent of injury inflicted; the extent of threat to staff, inmates, or visitors; and any efforts to temper the use of force. *Id.* at 321. In the final analysis, an Eighth Amendment prisoner case involving the alleged excessive use of force by prison officials should not go to the jury "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Id.* at 322.

In support of their Motion, Defendants have attached several affidavits concerning the March 11, 2011 incident. Officer Lundgren attests that on the morning of March 11, 2011, Plaintiff told him that that he would kill his cellmate if placed back into his cell. ECF No. 108-6 at ¶ 6. Sgt. Lundgren represents that it is his understanding that Warden McCabe authorized SCDC officers to place Plaintiff into the restraint chair. *Id.* Officer Lundgren further attests that Plaintiff never expressed that Plaintiff feared the other inmate. *Id.* at ¶ 7. Rather, Plaintiff expressed that he simply did not want a cellmate as he wanted the cell all to himself. *Id.* In her affidavit, Defendant Lloyd attests that she contacted Warden McCabe about Plaintiff's threats regarding his new cellmate, and the Warden authorized placing Plaintiff in the restraint chair. ECF No. 108-7 at 7. Additionally, Defendant Lloyd avers that Plaintiff "continued to make statements that he would kill any roommate he gets." *Id.* at ¶ 9.

Defendant Sheppard attests that he authorized Plaintiff's two extensions of time in the restraint chair. ECF No. 108-8 at ¶¶ 6-7. Defendant Sheppard attests that he authorized the extensions based on Plaintiff's statements that he would kill any roommate if he was placed back into his cell. *Id.* Specifically, Defendant Sheppard represents that "[i]n light of Plaintiff's

behavior and continued threats of violence towards any cellmate he was placed with, in my discretion I believe my actions in extending [Plaintiff's] restraint chair time were appropriate and reasonable." *Id.* at ¶ 10. Defendant McCabe also attests that he "personally went to the SMU and spoke with [Plaintiff who] reiterated to [him] that he did not want a cellmate and would kill any inmate assigned to his cell." ECF No. 108-9 at ¶ 6.

The undersigned has also reviewed the video evidence of Plaintiff being placed in the restraint chair. ECF No. 108-18. The video does not depict the events leading up to the decision to place Plaintiff in a restraint chair. *Id.* Rather, the video depicts Plaintiff already standing in the SMU "lobby," and he is wearing only underwear or boxer shorts and socks. *Id.* Medical personnel and several SCDC officers were involved in Plaintiff's placement in the restraint chair, and Plaintiff does not fight the officers while being placed in the restraint chair and is complaint. *Id.* While securing Plaintiff into the restraint chair, SCDC officers do not harm or hurt Plaintiff. *Id.* A female that the undersigned believes references herself as "Ms. Jones" checks Plaintiff's restraints to ensure that they are not too tight. *Id.* After Plaintiff is restrained in the chair, SCDC officers wheel him into a small cell with a narrow window and lock him inside. *Id.*

The second part of the video depicts Plaintiff returning from the restroom and being placed in the restraint chair for another four-hour period of time. *Id.* The video depicts SCDC officers restraining Plaintiff in the chair without incident and returning him to the holding cell. *Id.* Similarly, the third segment of the video depicts SCDC officers going to Plaintiff's holding cell and removing him from the chair. *Id.* Thereafter, Plaintiff stands and walks with the officers to the restroom, and he is allowed to use the restroom. *Id.* Plaintiff then walks back to the restraint chair where he is again restrained without incident. *Id.* After he is restrained, Plaintiff is again wheeled into the holding cell. *Id.* The last segment of the video depicts Plaintiff being

removed from the restraint chair without incident. *Id.* After Plaintiff is removed from the chair, SCDC officers walk Plaintiff to a holding cell and lock Plaintiff inside. *Id.*

The undersigned finds that Plaintiff has not offered any evidence to create a genuine issue of fact that Defendants used any force against Plaintiff or that the purported force was used "maliciously and sadistically for the very purpose of causing harm." Plaintiff admits that he repeatedly told SCDC officers that he would harm his new cellmate. Moreover, Plaintiff has not presented evidence that he suffered an injury as a result of the incident.  Accordingly, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's claim for excessive force from the March 11, 2011 incident.

### C.  Deliberate Indifference to Plaintiff's Medical Needs

Defendants argue that "[e]ven reading the Complaint in the most favorable light to Plaintiff, he fails to state an actionable claim for deliberate indifference to a serious medical need." ECF No. 108-1 at 17.

Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[d]eliberate indifference. . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.  In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.*  The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v.*

*Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted).  A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Here, there is no indication that Plaintiff suffered a serious medical condition. Plaintiff maintains that he suffered an injury to his right eye and sinus problems after the macing incidents. However, Plaintiff admits to receiving medical treatment for his eye condition and receiving medicated eye-drops. ECF No. 85 at 4. Additionally, Plaintiff was given ibuprofen for pain and told to return to medical services if medical conditions continued. *Id.* Plaintiff also alleges that he suffered "pain and problems with his left-knee from the prolonged stationary position in the restraint chair." *Id.* at 5. Plaintiff maintains that he was never assessed by any medical staff in response to requests for medical treatment for this issue. *Id.*

The undersigned finds that Plaintiff has failed to demonstrate he suffered a serious medical condition. Furthermore, Plaintiff has failed to put forth any evidence that he was denied medical treatment for any of his medical issues. Rather, medical notes indicate that Plaintiff was seen a total of ten times by medical services following the first macing incident through the years' end. ECF No. 108-15. Additionally, evidence demonstrates that Plaintiff was seen and evaluated by medical staff after the two macing incidents and before, during, and after his placement in the restraint chair.  ECF Nos. 108-4; 108-10; 108-13-108-18.  Therefore, the undersigned finds that Plaintiff's Amended Complaint fails to contain facts that, if true, demonstrate that Defendants knew of and disregarded Plaintiff's serious medical needs. However, to the extent that Plaintiff raised a cognizable medical indifference claim, the undersigned recommends that Plaintiff's medical indifference claim be denied and dismissed based on lack of evidence that Plaintiff was denied medical treatment for a serious medical injury.

D.  Right to Privacy

Defendants argue that "there simply is no evidence in this case that Defendants McCabe, Sheppard, or Lloyd violated Plaintiff's right to privacy, and therefore, summary judgment is proper as a matter of law. ECF No. 108-1 at 19. Here, Plaintiff alleges that Defendants violated his right to privacy by performing a strip search without a reasonable amount of privacy and conducting it in a public place, visible to the SMU population and numerous members of the opposite sex. ECF No. 85 at 8. Additionally, Plaintiff maintains that he was deprived of underwear so that his genitals and buttocks were exposed in a public place. *Id.* Plaintiff maintains that he was displayed "in front of a tour group of teenagers, the SMU population and numerous members of the opposite sex. *Id.*[3]

Strip searches do not violate a prisoner's Fourth Amendment right to privacy if the search is reasonable. *Bell v. Wolfish,* 441 U.S. 520 (1979). The test of reasonableness requires considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559. Addressing invasion of privacy claims by prisoners, the Fourth Circuit has stated:

> Persons in prison must surrender many rights of privacy which most people may claim in their private homes. Much of the life in prison is communal, and many prisoners must be housed in cells with openings through which they may be seen by guards. Most people, however, have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. When not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons.

---

[3] Plaintiff also alleges that Defendants failed to adhere to SCDC policies and procedures. ECF No. 85 at 8. Failure to adhere to policies does not rise to a constitutional violation. Accordingly, the undersigned will not address this claim on its merit and recommends dismissing it. Additionally, Plaintiff alleges that Defendants denied him personal property, such as clothing for three days, acted deliberately indifferent, and engaged in this activity for the purpose of punishing, embarrassing, humiliating, mocking or otherwise retaliating against him. *Id.* The undersigned addressed Plaintiff's claim of deliberate indifference in the preceding section. The undersigned will address Plaintiff's conditions of confinement allegations in the following section.

*Lee v. Downs,* 641 F.2d 1117, 1119 (4th Cir. 1981). "In determining whether a certain act violated a prisoner's right to privacy, the court must determine if there was reasonable necessity for the act . . . . [R]easonable necessity is intertwined with penological interest: if an inmate's privacy can be maintained without compromising prison operations, then that privacy should be respected." *Pelzer v. McCall,* No. 8:10–cv–914–RMG–JDA, 2011 WL 3021193, at *9 (D.S.C. July 22, 2011) (internal citations omitted). Further, an inmate's Fourth Amendment "right to privacy [is] not violated by the occasional, inadvertent encounter with female guards." *Thomas v. Shields,* 981 F.2d 1252 (4th Cir. 1992) (table opinion).

The undersigned finds that there is no evidence that Plaintiff was strip searched or that Defendants put Plaintiff on display in front of a group of teenagers. The video evidence before the court demonstrates Plaintiff wearing socks and boxers while being placed in the restraint chair. *See* ECF No. 108-18. Had a strip search occurred before Plaintiff was placed in the restraint chair, the undersigned finds that it was reasonably necessary for the penological interest of protecting SCDC officers and Plaintiff. Moreover, as Defendants argue, Plaintiff has failed to provide a detailed account of who was involved in the alleged strip search or how the strip search was unreasonably conducted. Rather, Plaintiff merely alleges that he was "strip searched in an opened (sic) area conducted in front of other officers-male and female-and visible to other inmates. [He] was allowed to put his underwear back on and placed back in full restraints again." ECF No. 85 at 5. Additionally, Plaintiff alleges that "[a]t some point, a group of teenage kids was brought through the SMU and [Plaintiff] was put on display, as if he were an animal or an unruly inmate being disciplined." *Id.* Plaintiff only names Officer Lundgren as a participant in the alleged "display," and Officer Lundgren is not a party to this lawsuit. *Id.*

Therefore, the undersigned finds that Plaintiff's Amended Complaint fails to contain sufficient facts to comply with Rule 8. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (finding the purpose behind Rule 8 is to give the defendant fair notice of the claims and the grounds upon which it rest and a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ."). However, to the extent that Plaintiff raised a cognizable invasion of privacy claim, the undersigned recommends that Plaintiff's cause of action denied and dismissed based on lack of evidence that Defendants unreasonably violated Plaintiff's right to privacy.

### E.  Conditions of Confinement

Though not articulated as a separate argument by Defendants, Plaintiff has alleged that the conditions of his confinement violated the Eight Amendment. ECF No. 85 at 6-7. Specifically, Plaintiff has alleged that he was denied sanitary living conditions and environments free from chemical munitions, running water, air circulation, a shower after being maced, hygiene products and clean clothes. *Id.*

In order to state an Eighth Amendment violation with respect to prison conditions, a prisoner must show: "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted). To establish the subjective component of a conditions-of-confinement claim, a prisoner must show that prison officials acted with deliberate indifference—that is, the prisoner must show the officials acted with more than mere negligence but less then malice. *See Williams v. Benjamin*, 77 F.3d at 761; *see also Farmer v. Brennan*, 511 U.S. at 835–37. For the objective component of a conditions-of-confinement claim, the prisoner must demonstrate an extreme deprivation of his rights. *See Williams v. Branker*, 462 F. App'x. 348, 353 (4th Cir. 2012).

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, and medical care. . . ." *Farmer*, 511 U.S. at 832. Even so, the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal citation omitted) ("[T]he ordinary discomfort accompanying prison life is part and parcel of the punishment those individuals convicted of criminal offenses endure as recompense for their criminal activity. Accordingly, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim."). "[I]n order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." *Id.*

Here, Plaintiff has alleged that he was deprived of certain necessities, like a shower, for a relatively short period of time. Therefore, the length of Plaintiff's alleged deprivation does not amount to a constitutional violation. *See, e.g., Shakka v. Smith,* 71 F.3d at 168 (finding inmate's constitutional rights were not violated when he was not given access to shower for three days). Moreover, Plaintiff has offered no evidence to support his claims. Additionally, as required by *Strickler*, Plaintiff has failed to produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions. 989 F.2d at 1381. Rather, the only evidence in the record demonstrates that Plaintiff never suffered a serious deprivation of necessities. Therefore, the undersigned recommends dismissing Plaintiff's causes of action concerning prison conditions.

F.  Qualified Immunity

Defendants argue they are entitled to qualified immunity because Plaintiff has failed to show that Defendants violated any of his clearly established rights. ECF No. 108-1 at 19-22.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004) (internal citation omitted). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* at 301-02 (citations and internal quotation omitted).

Based on the analysis of the facts presented in the sections above and considering the facts in the most favorable light to the Plaintiff, the undersigned recommends granting Defendants qualified immunity. The record before the court shows that Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion.

Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendants be granted qualified immunity.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant*s*' Motion for Summary Judgment, ECF No. 108, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.


May 8, 2015                                          Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**