IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| DAVID KEITH BUFF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 5:13-cv-01901-TLW |
| | ) |
| WAYNE MCCABE; ANN SHEPPARD; | ) |
| DESSIRENE LLOYD; CARL VON | ) |
| MUTIUS; JUSTIN ARANDA; and | ) |
| DOUGLAS COOK, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**ORDER**

Plaintiff David Keith Buff, proceeding pro se and in forma pauperis, brought this action pursuant to 42 U.S.C. § 1983, alleging violation of his constitutional rights by employees of the Lieber Correctional Institution. (Doc. #85). Plaintiff alleges that Defendants used excessive force against him when they sprayed him with chemical munitions on January 6 and March 10, 2011; violated his Eighth Amendment rights when they denied his requests to decontaminate himself and his cell following the January 6 and March 10 incidents; used excessive force when placing him in a restraint chair for 12 hours on March 11, 2011; violated his Eighth Amendment rights by denying his requests to decontaminate before being placed in the restraint chair and a strip cell on March 11; violated his Eighth Amendment rights by "being deliberately indifferent to the consequences of [their] actions"; and violated his right to privacy by subjecting him to a strip search in front of female prison guards and by placing him "on display" for a group of teenagers while he was in the restraint chair. Id. United States Magistrate Judge Kaymani D. West, to whom this case was assigned pursuant to 28 U.S.C. § 636(b) and Local Civil Rule

1

73.02(B)(2)(d), (D.S.C.), prepared a Report and Recommendation (the "Report") in which she sets forth in detail the relevant facts and standards of law. (Doc. #119). The Court incorporates the Magistrate Judge's recitation of the facts and legal standards herein.

Defendants filed a motion to dismiss for failure to state a claim or, in the alternative, motion for summary judgment on January 27, 2015. (Doc. #108). Plaintiff filed a response in opposition on April 13 (Doc. #117), to which Defendants replied on April 23 (Doc. #118). This matter is now before the Court for review of the Magistrate Judge's Report, in which she recommends that this Court grant Defendants' motion for summary judgment. (Doc. #119). Plaintiff filed objections to the Report on May 29, 2015 (Doc. #121), and Defendants replied on June 15 (Doc. #123). This matter is now ripe for disposition.

In conducting its review of the Report, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

<u>Wallace v. Housing Auth. of the City of Columbia</u>, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

Plaintiff has set forth a number of specific objections to the Report, and the Court will address each in turn. Plaintiff first takes issue with the Magistrate Judge's finding that Defendants did not use excessive force by employing chemical munitions during the January 6 and March 10 incidents. (Doc. #121 at 1-3). He asserts that there was no "need" for the use of

mace during either incident. Id. at 2, 3. However, Plaintiff does not contest the Magistrate Judge's finding that he failed to comply with Defendants' repeated verbal commands (1) to return a food tray that could be used as a weapon, and (2) to occupy a cell with a new roommate, before the mace was used on both occasions. The Court agrees with the Magistrate Judge that the use of mace was justified to compel Plaintiff's obedience during each incident, and the amount of mace used was not excessive. Accordingly, Plaintiff's first and third objections are overruled, and the Court accepts in full the Magistrate Judge's legal analysis and recommendation that Defendants be granted summary judgment on Plaintiff's excessive force claims related to the January 6 and March 10 incidents.

Plaintiff also contends that the Magistrate Judge erred in recommending that Defendants be granted summary judgment on Plaintiff's claims that they refused his requests to decontaminate himself and his cell on January 6, March 10, and March 11. Id. at 2, 3-4, 6. He asserts that Defendants have not submitted any evidence to contradict his allegations that they denied his requests for a shower, sanitation supplies, running cell water, and clean laundry after he was sprayed with chemical munitions. Id. Even accepting Plaintiff's allegations that Defendants turned off his cell water and air circulation and denied his requests to wash off the mace, the Court finds that Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims with respect to the alleged refusal to allow decontamination.

Plaintiff relies heavily on the Fourth Circuit's decision in Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996), to support his contention that denial of decontamination measures constitutes an Eighth Amendment violation. However, Williams and Mann v. Failey, No. 13-6446, 578 F. App'x 267 (4th Cir. July 17, 2014), are materially distinguishable as to their facts from the case at hand. In Williams and Mann, the Fourth Circuit found that the plaintiffs stated

viable Eighth Amendment claims where they were sprayed with chemical munitions, inflicted with significant injuries, denied access to medical personnel, and denied the opportunity to decontaminate. See Williams, 77 F.3d at 760; Mann, 578 F. App'x at 269-71. In this case, by contrast, Plaintiff was sprayed with chemical munitions and then immediately evaluated and cleared by medical personnel. On January 6, Nurse Toby Markowitz saw Plaintiff 35 minutes after he was sprayed with mace. (Doc. #108-4 at 1-2). Nurse Markowitz attested that Plaintiff was not experiencing any breathing distress, thus no treatment was given. Id. at 2. His treatment notes in the January 6 Use of Force Report also indicate that Plaintiff needed no treatment. (Doc. #108-13 at 2). On March 10, LPN Nastasha Gibson evaluated and cleared Plaintiff after he was sprayed with mace, noting that he had no injuries or respiratory distress and that no further treatment was needed. (Doc. #108-16 at 2, 4). Finally, Nurse James Brandfass attested that Plaintiff was evaluated when he was placed into and removed from the restraint chair on March 11, and Plaintiff was in no acute distress. (Doc. #108-10 at 2). The record reflects that Defendants had no indication that Plaintiff was suffering from any injury or was otherwise in distress. The need to decontaminate found in Williams and Mann was not present here. Defendants are therefore entitled to summary judgment on Plaintiff's Eighth Amendment claims that they denied his requests to decontaminate on January 6, March 10, and March 11. Moreover, because medical personnel evaluated and cleared Plaintiff after he was sprayed with mace, the Court finds that it would not have been clear to a reasonable prison guard that the Defendants' alleged conduct was unlawful. See Parrish v. Cleveland, 372 F.3d 294, 301-02 (4th Cir. 2004). Accordingly, Defendants are entitled to qualified immunity on Plaintiff's claims related to the denial of his requests to decontaminate. Plaintiff's second, fourth, and seventh objections are overruled.

Plaintiff also contests the Magistrate Judge's conclusion that Defendants did not use excessive force by placing him in the restraint chair for a total of 12 hours on March 11. (Doc. #121 at 4-6). He contends that he never threatened to kill his cell inmate and that he was never disruptive, loud, vulgar, or otherwise unruly, thus there was no need to use the restraint chair. Id. However, Plaintiff did not present any evidence that excessive force was used while he was placed in the restraint chair or that he suffered any injury. Additionally, even under Plaintiff's version of the facts, Defendants put him in the restraint chair after he refused to be housed with his new cellmate, despite the fact that Defendants had already used chemical munitions in an attempt to compel his obedience. As the Fourth Circuit noted in Williams, the use of restraints "is seemingly a not uncommon 'next' step, if verbal commands, show of force, and mace, are ineffective in controlling prisoners." 77 F.3d at 764. Because Plaintiff failed to comply with Defendants' orders despite their verbal commands, show of force, and use of mace, use of the restraint chair was not an inappropriate "next step," and the Court agrees with the Magistrate Judge that the record does not support a reliable inference of wantonness in the infliction of pain. The Court therefore accepts the Magistrate Judge's finding that Plaintiff has not submitted evidence to create a genuine issue of material fact as to whether Defendants' decision to place him in the restraint chair for 12 hours evidenced a sadistic or malicious intent to punish Plaintiff, and Plaintiff's sixth objection is overruled.

Plaintiff additionally claims that there is a genuine issue of material fact as to "whether restraint chair placement for alleged verbal threats only imposed atypical significant hardship on Plaintiff in relation to ordinary incidents of prison life." (Doc. #121 at 6). He labels this as a "freedom from restraint" claim, and he argues that Defendants have introduced no evidence that they provided either procedural or substantive protections prior to placing him in the restraint

chair. Id. However, Plaintiff did not raise a due process freedom from restraint claim in his Amended Complaint or in his response in opposition to Defendants' motion for summary judgment, and he cannot raise a new claim for the first time in his objections to the Report. See Folkes v. Byrd, No. 8:10-22-HMH, 2010 WL 4721575, at *2 (D.S.C. Nov. 15, 2010) ("Because [the plaintiff's] deprivation of access to the courts claim was not presented to the magistrate judge, the court declines to entertain this claim for the first time at the summary judgment stage."). Plaintiff's eighth objection is therefore overruled.

Plaintiff next objects the Magistrate Judge's conclusion that Defendants are entitled to summary judgment on his right to privacy claim, contending that he "has clearly proffered sufficient evidence through the verified amended complaint and sworn affidavit of [Plaintiff], that . . . a genuine issue of material fact exists concerning the invasion of privacy through a public strip search of Plaintiff in front of numerous members of the opposite sex. . . ." (Doc. #121 at 4). Despite the lack of evidence that a strip search actually occurred, the Court accepts Plaintiff's allegations that he was strip-searched in a public area of the prison and within eyesight of female prison guards. However, the Court concludes that Defendants are entitled to (1) qualified immunity on Plaintiff's right to privacy claim and (2) a finding that any exposure was "reasonably necessary," as noted by the Magistrate Judge in the Report. "[E]xposure of a prisoner's genitals to members of the opposite sex violates his constitutional rights" when it is "not reasonably necessary." Strickler v. Waters, 989 F.2d 1375, 1387 (4th Cir. 1993). Here, Plaintiff was strip-searched and placed in the restraint chair after continually disobeying Defendants' commands. He refused to be housed with his new cellmate even after he was sprayed with chemical munitions. He repeatedly made homicidal threats, and Defendants were armed with the knowledge that he had previously attacked a fellow inmate who later died from

his injuries. (See Doc. #108-12 at 2-4, #108-8 at 1). Defendant McCabe, the warden of Lieber Correctional Institution, personally spoke with Plaintiff while he was in the restraint chair, and Plaintiff reiterated that he would kill "any inmate assigned to his cell." (Doc. #108-9 at 2). Defendants were confronted with an extreme circumstance by the Plaintiff, who threatened homicide and was placed in the restraint chair. The Court cannot conclude that it was "not reasonably necessary" to strip-search a defiant and potentially violent inmate before placing him in the restraint chair. In light of the exigency of the circumstances created by Plaintiff, the Court finds that the case law did not make it clear that Defendants' alleged conduct was unlawful in the situation they confronted. See Parrish, 372 F.3d at 301-02 (noting that "if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted' – then the law affords immunity from suit.").

As to Jones v. Price, 696 F. Supp. 2d 618 (N.D.W. Va. 2010), this Court notes that the strip search in that case occurred in a non-private area in front of a female employee. Furthermore, the plaintiff had alleged that there was a private room ten feet from where the strip search took place, yet the room was not used. (Id. at 620). As well, the facts do not reflect that anyone was in danger, in contrast to the case before this Court. Additionally, in X v. Bratten, 32 F.3d 564 (4th Cir., 1994), female guards observed the plaintiff/prisoner while he showered. That allegation in the verified complaint was sufficient to preclude summary judgment. Again, in Bratten, the facts do not reflect that the danger issue was in play.

7

Accordingly, on the alleged strip search privacy claim, Defendants are entitled to (1) qualified immunity and (2) a finding that the search was a "reasonable necessity" in light of the facts and as noted in the Report. Plaintiff's fifth objection is overruled.[1]

Finally, Plaintiff contends that he was denied access to relevant documents that pertain directly to this case. (Doc. #121 at 7). As this is not an objection to the Magistrate Judge's findings or recommendations, Plaintiff's ninth objection is overruled.

The Court has carefully reviewed the Report and Plaintiff's objections thereto in accordance with the standard announced in <u>Wallace</u>, and it concludes that the Magistrate Judge accurately summarizes the case and the applicable law. It is therefore **ORDERED** that the Magistrate Judge's Report and Recommendation is **ACCEPTED** (Doc. #119), and Plaintiff's objections are **OVERRULED** (Doc. #121).[2] Defendants' motion for summary judgment is hereby **GRANTED**. (Doc. #108).

**IT IS SO ORDERED**.

<u>s/ Terry L. Wooten</u>
Terry L. Wooten
Chief United States District Judge

August 10, 2015
Columbia, South Carolina

---

[1] Plaintiff did not raise a specific objection to the Magistrate Judge's finding that Defendants are entitled to summary judgment on Plaintiff's claim that they violated his right to privacy by putting him "on display" for a group of teenagers. The Court therefore accepts the Magistrate Judge's recommendation.

[2] In his tenth objection, Plaintiff asserts that Defendants are not entitled to qualified immunity because his Eighth Amendment rights were clearly established at the time the violations occurred. (Doc. #121 at 7-8). As outlined above, the Court concludes that Defendants are in fact protected by qualified immunity. This objection is therefore overruled.